IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| RONALDO SERPAS PARADA, personal representative of the estate of RODOLFO PEREZ SERPAS,<br><br>Plaintiff,<br><br>v.<br><br>MJ'S LABOR SERVICES, INC., a domestic corporation; JAMES MAGOTEAUX; and JANI MAGOTEAUX,<br><br>Defendants. | Case No. 2:17-cv-00521-SU<br><br>**OPINION AND ORDER** |

SULLIVAN, United States Magistrate Judge:

This action concerns conditions at MJ's Motel in Boardman, Oregon, where former plaintiff Rodolfo Perez Serpas stayed in 2016. Following Perez Serpas' death in March 2018,

plaintiff Ronaldo Serpas Parada was appointed his personal representative and was substituted as plaintiff in this matter. (Docket Nos. 77, 79). Perez Serpas stayed at MJ's Motel while working for defendant MJ's Labor Services, Inc. ("MJ's Labor"), a labor and contracting service. Defendants James and Jani Magoteaux (the "Magoteaux defendants") own both MJ's Motel and MJ's Labor. Perez Serpas experienced a bed bug infestation in his room at MJ's Motel.

Defendants have moved for summary judgment, which plaintiff opposes. (Docket Nos. 29, 41). The Court heard oral argument on May 21, 2019 (Docket Nos. 82, 84, 85), and ordered supplemental briefing (Docket Nos. 86-88, 91, 92).

For the following reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, defendants' Motion for Summary Judgment.

## FACTUAL BACKGROUND

Former plaintiff Perez Serpas was a migrant farmworker who temporarily lived and worked in Oregon for several years. Del Carlo Decl. ¶ 2, Ex. A, Hereford 30(b)(6) Dep. 13:6-20 (Docket No. 51). During the 2016 season, Perez Serpas worked for MJ's Labor. *Id.*; James Magoteaux Decl. ¶¶ 6 & 7 (Docket No. 31); Del Carlo Decl. ¶ 11, Ex. J, 397 (Docket No. 46).

### A. Defendants' Business

The Magoteaux defendants are a married couple who own MJ's Labor as a closely-held corporation. Hereford Dep. 14:6-8, 16-19; Magoteaux Decl. ¶ 2. Jani Magoteaux and James Magoteaux own 60% and 40% of the shares of MJ's Labor, respectively. Del Carlo Decl. ¶ 10, Ex. I, 265-272 (Docket No. 45). All of MJ's Labor's employees are agricultural workers, except their administrative employees. Hereford Dep. 17:1-5; Del Carlo Decl. ¶ 9, Ex. H, Perez Serpas Dep. 9:8-24 (Docket No. 50). MJ's Labor employs approximately 600 workers during its peak season, August to October, and 200 workers in the off season. Hereford Dep. 17:25-18:15.

MJ's Labor is registered with the U.S. Department of Labor and the Oregon Bureau of Labor and Industries as a farm labor contractor. Del Carlo Decl., Ex. I, 265-278. Jani Magoteaux is licensed with the state as a farm labor contractor. Del Carlo Decl. ¶ 14, Ex. Q; Ex. I, 137, 221-33, 273-278. James Magoteaux is licensed by the federal government as a farm labor contractor. Del Carlo Decl. ¶ 3, Ex. B, James Magoteaux Dep. 19:9-12 (Docket No. 50).

Plaintiff argues that defendants use the name "MJ's Motel" to describe the part of MJ's Labor's business that provides housing to its workers. The name "MJ's Motel" appears not to have been registered as a business entity with the state of Oregon prior to commencement of this action. Bradley Decl. ¶ 5, Ex. O (Docket No. 43-1). Plaintiff argues that there is a "tight nexus" between MJ's Labor, the Magoteauxs, and MJ's Hotel. In applications to the U.S. Department of Labor to register as a farm labor contractor, MJ's Labor represented for multiple years that it owned or controlled a migrant housing facility. Del Carlo Decl., Ex. I, 84, 101, 222, 265-72. It submitted documents to the department stating that it is a "housing provider" at a location "commonly known as MJ's Motel." *Id.*, 88, 106, 226, 269. The department's farm labor contractor database shows that MJ's Labor was granted worker housing authorization. Bradley Decl. ¶ 2, Ex. L (Docket No. 43-1). Many of MJ's Motel's occupants are MJ's Labor employees. Del Carlo Decl., Ex. J, 405. MJ's Motel's manager is Yeni Gordillo, whom MJ's Labor pays and provides benefits, and whose husband works for MJ's Labor. Hereford Dep. 22:8-24, 33:22-24, 60:25-61:4. Brent Hereford, MJ's Labor's business manager, performs most of MJ's Motel's clerical and administrative work. *Id.* 63:4-14. Hereford completed and filed documents to register "MJ's Motel, Inc." with the state of Oregon as a business corporation in June 2017, after this action commenced. *Id.* 53:18-54:1. Other MJ's Labor staff, including Iris Chavez, regularly operate MJ's Motel. *Id.* 44:25-47; Del Carlo Decl. ¶ 7, Ex. F, Chavez Dep.

9:11-22, 22:2-25:2 (Docket No. 45). MJ's Labor runs vans for its workers, which stop at MJ's Motel daily to provide transportation to and from work sites. Hereford Dep. 25:4-6; Del Carlo Decl. ¶ 6, Ex. E, Izquierdo Dep. 46:1-9 (Docket No. 45). MJ's Labor has an office at MJ's Motel where its employees can pick up paychecks. Hereford Dep. 27:17-28:15. MJ's Labor, under its prior name, "MJ's Labor Contractors," signed the leases of the building and land where MJ's Motel is located. Del Carlo Decl. Ex. J, 144, 260, 279.

Plaintiff points to other distinct aspects of MJ's Motel, arguing that it does not operate on a regular commercial basis as a regular commercial motel. It does not have a vacancy sign, does not take reservations, assigns roommate lodgers who are strangers on a space-available basis, does not have a website or advertising other than a phone book listing, has no way of indicating from the street whether a room is available, accepts only cash payments, does not supply towels, and pays no salary to anyone. Izquierdo Dep. 23:21-23, 28:6-7, 38:8-10, 38:8-19, 44:10-20, 46:1-9; Hereford Dep. 22:4-24; Magoteaux Dep. 28:6-7. MJ's Motel has run at a loss of approximately $18,000 the past two years, although defendants' various businesses, considered together, are profitable. Hereford Dep. 58:1-4, 59:8-10, 60:17-19; Del Carlo Decl. Ex. J, 155-169, 182; Magoteaux Dep. 30:7-18.

Defendants characterize MJ's Motel as an assumed business name for a partnership the Magoteauxs use to operate a motel business separate from MJ's Labor. Magoteaux Decl. ¶ 2. Defendants contend that they operate MJ's Motel as a budget motel for those who cannot afford other accommodations. *Id.* ¶ 4. It is licensed by Umatilla County as a tourist accommodation and is certified by the County Health Department. *Id.* ¶ 13, Ex. 4 (Docket No. 31-4). Rooms are cleaned daily and fresh sheets are given upon a patron's initial arrival. Magoteaux Decl. ¶ 4. MJ's Motel is open to the public, and customers include referrals from local churches, migrant

agricultural workers, and temporary construction workers. *Id.* ¶ 3. Agricultural workers pay the same rates and have the same room types as the general public. *Id.* MJ's Labor states that it does not provide housing for employees. *Id.* ¶ 14, Ex. 5 (Docket No. 31-5). MJ's Labor does not have any ownership interest in MJ's Motel, and they are separate and operate independently. Magoteaux Decl. ¶ 5.

B. **Perez Serpas and MJ's Motel**

In March 2016, Perez Serpas arrived in Oregon from California and began working for MJ's Labor. Perez Serpas need a place to stay, and Don Luis, an MJ's Labor supervisor, directed him to MJ's Motel. Perez Serpas Dep. 14:9-21; 17:10-25, 18:3-4. Perez Serpas rented a room at MJ's Motel, paying $40.00 per week, the standard rate. Del Carlo Decl. Ex. J, 397; Magoteaux Decl. ¶ 7; Perez Serpas Dep. 30:6-10. MJ's Labor's vans transported Perez Serpas between MJ's Motel and work. *Id.* 41:1-4, 48:1-4.

When Perez Serpas checked into MJ's Motel in April 2016, Gordillo placed him room 10, but at the end of May 2016, Gordillo moved him to room 14. Izquierdo Dep. 10:3-5; Del Carlo Ex. I, 80. In room 14, Perez Serpas immediately began suffering bed bug bites. Perez Serpas Dep. 15:1-23, 33:1-8, 34:5-8, 80:9-14. He complained about the bed bugs to Gordillo and her husband on a weekly basis, but when he asked them to move him to another room, they refused. *Id.* 15:8-16, 34:5-16, 72:4-20. Gordillo reported Perez Serpas' complaints to James Magoteaux. Izquierdo Dep. 13:10-19. Perez Serpas filed complaints with MJ's Labor to Norma Silva and Iris Chavez, who told James Magoteaux. Perez Serpas Dep. 68:2-15; Chavez Dep. 19:1-25; Del Carlo Decl. Ex. I, 80, 81. Defendants did not change Perez Serpas' room, offer to help him find other quarters, change his bed, or refund his money; instead they told Perez Serpas he had to stay in the room, sleep in the bed, and cope with the infestation, despite other rooms

being available on multiple occasions. Hereford Dep. 55:16-56:5, 57:17-25; Izquierdo Dep. 15:6-16, 50:15-20, 49:21-50:3; Del Carlo. Ex. J, 372-389, 416; Del Carlo Decl. ¶ 13, Ex. P (Docket No. 48). Defendants had sprayed the whole Motel for bed bugs in 2014, and room 14 specifically multiple times in 2015 and 2016. Del Carlo. Ex. J, 229, 289-298 & Ex. I, 82; Chavez Dep. 23:9-12.

After Perez Serpas complained of the bed bugs, defendants hired Rose Hart Pest Control to treat the room, which it did three times, each treatment consisting of three separate pesticide applications. Magoteaux Decl. ¶ 8. The spraying, however, did not resolve the infestation. Perez Serpas Dep. 58:13, 68:24-69:1, 79:2-80:4, 81:11-17. Instead, Perez Serpas lived with the bed bugs for months, experiencing great physical pain and distress, including itching, anxiety, the sensation of insects crawling on his skin, humiliation, and insomnia. *Id.* Some of the bug bites became infected, but because of his shame over the affliction, he did not seek medical treatment. *Id.* Perez Serpas and his roommate began sleeping on the floor to avoid the infested mattresses, where they could see bed bugs and eggs. *Id.* 61:2-21. Gordillo performed a perfunctory clean-up of room 14, and also left Perez Serpas a broom to clean it himself. *Id.*

Defendants argue that the repeated failure of treatments to clear the bed bugs indicated that Perez Serpas himself was the source of the infestation, and so he needed to vacate the room. Magoteaux Decl. ¶ 9. In October 2016, defendant James Magoteaux gave Perez Serpas an eviction notice, implying that he may have been the source of the bugs, stating that they needed to treat the room, and saying that they did not want bed bugs to spread. Perez Serpas Dep. 34:13-16, 68:2-19, 73:17-29, 86:9-16; Del Carlo Decl. ¶ 12, Ex. K (Docket No. 47); Magoteaux Decl. ¶ 10. Initially, Perez Serpas was unable to find other housing because of a shortage of low-cost housing, and friends' refusals to allow him to stay with them due to fear of bed bugs. Perez

Serpas Dep. 31:18-23, 56:9-13, 59:9-13, 66:13-17, 73:1-7. After defendants gave Perez Serpas a second eviction notice, he found himself with nowhere to go and unable to tolerate MJ's Motel's conditions, so he slept in his car for two weeks. *Id.* 16:4-5, 22:9-12, 80:24-81:2.

## PROCEDURAL BACKGROUND

Defendants file their Motion for Summary Judgment against plaintiff's claims.

Plaintiff's First Amended Complaint (Docket No. 9) brings five claims for relief:

1) Violations of the Migrant Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801-1872;

2) Violations of the Oregon Unlawful Trade Practices Act ("UTPA"), Or. Rev. Stat. § 646.608(1), for misrepresenting and falsely advertising the nature of MJ's Motel, disparaging Perez Serpas through the eviction notice, and failing to disclose known defects and noncompliance with the Oregon Travelers' Accommodation rules;

3) Negligence;

4) Transacting business as unregistered assumed business name, *id.* § 648.135(2); and

5) Violations of the Oregon Contractor Registration Act ("OCRA"), *id.* § 658.440.[1]

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The burden is on the moving party to point out the absence of any genuine issue of material fact; once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In opposing summary judgment, a party may not rely on

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636. (Docket Nos. 17, 21, 22).

mere allegations or denials in pleadings, but must set forth specific facts supported by competent evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. *Robi v. Reed*, 173 F.3d 736, 739 (9th Cir. 1999). "A fact issue is genuine if the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quotation omitted). "The non-moving party has failed to meet its burden if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (quotation omitted). The substantive law governing a claim or defense determines whether a fact is material. *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). In evaluating a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *Anderson*, 477 U.S. 242, 248 (1986).

## ANALYSIS

Defendants raise multiple arguments as to why they are entitled to summary judgment on each of plaintiff's causes of action.

### II. MJ's Labor Services and MJ's Motel

Defendants first argue that MJ's Labor is entitled to summary judgment on all claims because undisputed evidence shows that it did not own, operate, or control MJ's Motel.

However, plaintiff has presented evidence of numerous disputed facts, as recited above, from which a jury could conclude that MJ's Labor owns and operates MJ's Motel. For instance, MJ's Labor represented to the U.S. Department of Labor that it owned or controlled a migrant

housing facility and that it was a "housing provider" at MJ's Motel, and MJ's Labor was granted worker housing authorization. Del Carlo Decl., Ex. I, 84, 88, 101, 106, 222, 226, 265-72; Bradley Decl. Ex. L. Gordillo manages MJ's Motel, but is paid and provided benefits by MJ's Labor. Hereford Dep. 22:8-24, 33:22-24, 60:25-61:4. Hereford, MJ's Labor's business manager, performs most of MJ's Motel's clerical and administrative work. *Id.* 63:4-14. MJ's Labor signed the leases of MJ's Motel's building and land. Del Carlo Decl. Ex. J, 144, 260, 279. *See, e.g.*, *Vermeer v. Dismantling Contractors, Inc.*, 90 Or. App. 74, 78 (1988) (discussing corporate alter egos); *U.S. Football League Players Ass'n, U.S. Football League*, 650 F. Supp. 12, 14 (D. Or. 1986) ("The single employer standard is relevant when separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise." (quotation omitted)).

Thus, there are material issues of fact as to whether MJ's Labor can be liable for the actions of MJ's Motel, and the Court DENIES defendants' Motion for Summary Judgment on this issue.

### III.  Migrant and Seasonal Agricultural Workers Protection Act

The MSPA sets standards to protect migrant and seasonal workers, such as:

> Each person who owns or controls a facility or real property which is used as housing for migrant agricultural workers shall be responsible for ensuring that the facility or real property complies with substantive Federal and State safety and health standards applicable to that housing.

29 U.S.C. § 1823(a). However, the MSPA provides an exemption from housing requirements under the "innkeeper exemption," for those who regularly provide housing on a commercial basis to the general public and provide housing to migrant agricultural workers on the same terms and conditions:

> This section does not apply to any person who, in the ordinary course of that person's business, regularly provides housing on a commercial basis to the general public and who provides housing to migrant agricultural workers of the same character and on the same or comparable terms and conditions as is provided to the general public.

*Id.* § 1823(c); *see also* 29 C.F.R. § 500.131.[2]

In addition to arguing that MJ's Labor does not operate MJ's Motel and thus is not liable under the MSPA, defendants argue that MJ's Motel is entitled to the innkeeper exemption from the MSPA claim because it offers housing on a commercial basis to the general public. However, there are disputed issues of fact on whether MJ'S Motel or Labor can avail itself of the innkeeper exemption. Defendants have presented evidence that MJ's Motel offers rooms to the general public at the same rate as those it offers agricultural workers, that other types of workers and individuals stay there, that rooms are assigned based on availability, and that no rooms are exclusively assigned to seasonal agricultural workers. Magoteaux Decl. ¶¶ 3-5.

Plaintiff submits evidence, however, from which a jury could conclude that MJ's Motel is, in fact, operated to serve MJ's Labor seasonal agricultural employees and not as accommodations open to the "general public." This includes evidence of MJ's Labor's operation and management of MJ's Motel, as described above. Additionally, MJ's Motel does not have a vacancy sign, does not take reservations, assigns roommate lodgers who are strangers to rooms on a space-available basis, does not have a website or advertising other than a phone book listing, has no way of indicating from the street whether a room is available, accepts only cash payments, does not supply towels, and pays no salary to anyone. Izquierdo Dep. 23:21-23, 28:6-7, 38:8-19, 44:10-20, 46:1-9; Hereford Dep. 22:4-24; Magoteaux Dep. 28:6-7. The Motel runs at a loss. Hereford Dep. 58:1-4, 59:8-10, 60:17-19; Del Carlo Decl. Ex. J, 155-169, 182;

---

[2] The Court sought supplemental briefing on the issue of "exemption" issue and its application to the facts of this case.

Magoteaux Dep. 30:7-18. This evidence raises a fact question whether MJ's Motel is, indeed, open to the public, or is part of MJ's Labor and exists to serve its seasonal workers.

There are material issues of fact as to whether defendants may invoke the innkeeper exemption under the MSPA, and thus the Court DENIES defendants' Motion for Summary Judgment on this issue.

## IV. Unfair Trade Practices Act

Plaintiff bring six counts under the UTPA:

A. By using the names "MJ's Motel," and "MJ's Motel Inc." defendants passed off real estate or services as the real estate or services of another, in violation of ORS 646.608(1)(a);

B. By using the names "MJ's Motel," and "MJ's Motel Inc." defendants represented that real estate or services had approval, characteristics, benefits, or qualities that the real estate or services do not have, in violation of ORS 646.608(1)(e);

C. By using the names "MJ's Motel," and "MJ's Motel Inc." defendants represented that real estate or services are of a particular standard, quality, or grade, or that real estate or is of a particular style or model, when the real estate or services were of another, in violation of ORS 646.608(1)(g);

D. By implying in the eviction notice that plaintiff was the source of the bed bug infestation, and that his patronage at the lodging facility was creating a financial burden for defendants, defendants disparaged the business of a customer or another by false or misleading representations of fact, in violation of ORS 646.608(1)(h);

E. By using the names "MJ's Motel," and "MJ's Motel Inc." defendants advertised real estate or services with intent not to provide the real estate or services as advertised, in violation of ORS 646.608(1)(i);

F. By failing to disclose, concurrent with tender or delivery of any real estate or services, any known material defect or material nonconformity, including its noncompliance with the Oregon Travelers' Accommodation rules governing trash removal and cleanliness, fresh bedding, and control of biting insects.

First Am. Compl. ¶ 37.

### A. The UTPA

The UTPA authorizes action against deceptive and unsafe business practices, including misrepresentations made in connection with the sale of goods, services, and real estate. *Pearson v. Phillip Morris, Inc.*, 358 Or. 88, 116 (2015). To prevail under the UTPA, a plaintiff generally must prove: (1) a false or misleading representation by the defendant, (2) causation (reliance in fact by the consumer), and (3) an ascertainable loss. *Feitler v. Animation Celection, Inc.*, 170 Or. App. 702, 708 (2000).

### B. Misleading Statements

As to plaintiff's Counts A, B, C, and E, plaintiff has not established that defendants made any misleading statements by calling their business "MJ's Motel." Use of the word "motel" does not imply any particular real estate or services, characteristics or qualities of real estate or services, grade or standard of real estate or services, or real estate or services that defendants did not intend to provide. *See Rathgeber v. James Hemenway, Inc.*, 176 Or. App 135, 141-42 (2001); *Pearson*, 257 Or. App at 116. Use of the word "motel" is not inconsistent with low-cost, temporary or migrant worker housing. For a representation of a standard, quality, or grade to be actionable under the UTPA, the representation must be referential, i.e., it must compare the real estate, goods, or services to an objective or independent standard. *Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or. 85, 91 (1977). Use of the term "motel" does not establish any objective or independent standard.

As to Counts A, B, C, and E, plaintiff has not submitted evidence of a misleading statement, and thus defendants are entitled to summary judgment on these Counts.

C.  Causation

In addition, in Counts A, B, C, and E of the UTPA claim, plaintiff has not established causation, that is, that Perez Serpas relied on the name "MJ's Motel" to his detriment and that this led to his damages. Misrepresentation claims require a plaintiff to prove reliance. *Sanders v. Francis*, 277 Or. 593, 598 (1997); *Feitler*, 170 Or. App at 708. Plaintiff has submitted no evidence of a causal link between Perez Serpas' loss (harm from bed bug bites) and defendants' alleged misrepresentations (using the name "MJ's Motel"). *See Fleshman v. Wells Fargo Bank, N.A.*, 27 F. Supp. 3d 1127, 1131-32 (D. Or. 2014).

As to plaintiff's Count D, regarding defendants' statements that plaintiff was the source of bed bugs, plaintiff has not established that such a statement caused any "disparage[ment] of the business of a customer or another," that is, that statements about Perez Serpas being a potential bed bug vector caused any ascertainable loss to his *business*. The UTPA provides that it is an unlawful trade practice to "[d]isparage[] the . . . *business* of a customer or another by false or misleading representations of fact." Or. Rev. Stat. § 646.608(1)(h) (emphasis added). The plain language of this statute shows that it is intended to protect a person's business, not to protect against him from embarrassment or offensive statements. *Volm v. Legacy Health System, Inc.*, No. 00-1168-KI, 2000 WL 1780343, at *1-2 (D. Or. 2000).

As to Counts A through E, plaintiff has not presented evidence of causation, and thus defendants are entitled to summary judgment on these Counts.

D.  Disclosure of Bedbugs

As to plaintiff's UTPA Count F claim—"failing to disclose . . . any known material defect or material nonconformity, including its noncompliance with the Oregon Travelers' Accommodation rules governing trash removal and cleanliness, fresh bedding, and control of

biting insects"—plaintiff has presented sufficient evidence to create a genuine issue of material fact. Plaintiff has submitted evidence that defendants had attempted to treat MJ's Motel for bed bugs for years prior to Perez Serpas' residency there, specifically in room 14. Del Carlo. Ex. J, 229, 289-298 & Ex. I, 82; Chavez Dep. 23:9-12.

Oregon Health Authority rules governing travelers' accommodations provide: "(1) Vector control measures shall be employed to prevent vector infestations in travelers' accommodations and hostels." Or. Admin. R. 333-029-0065(1). "[A]ll bedding for guest use shall be kept clean and in good repair." *Id.* 333-029-0090(6). A jury could find that the persistence of bed bugs demonstrates that defendants did not meet these standards.[3] A jury could find that defendants knew of the infestation generally, or specifically to room 14, did not take adequate control measures, and rented to Perez Serpas anyway. According to the pest control company, there were available pesticide insect-prevention measures that MJ's Motel could have utilized. Del Carlo. Decl. ¶ 8, Ex. G, Brooks 30(b)(6) Dep. 44:21-24 (Docket No. 50).

As to Count F, plaintiff has presented disputed issues of fact regarding disclosure of the bedbugs, and defendants are not entitled to summary judgment on this Count.

\*   \*   \*   \*   \*

As to plaintiff's UTPA claim, the Court GRANTS defendants' Motion for Summary Judgment as to Counts A through E, and DENIES it as to Count F.

---

[3] Plaintiff also invokes other rules. Federal OSHA rules regarding labor camps provide: "Insect and rodent control. Effective measures shall be taken to prevent infestation by and harborage of animal or insect vectors or pests." 29 C.F.R. § 1910.142(j). AWPA interpreting regulations require "reasonable protections for inhabitants from insects." *Id.* § 500.133. Oregon OSHA rules regarding farmworker housing require that housing providers "[k]eep all living areas, safe and in good repair structurally and stable on their foundations. They must provide shelter for the occupants against the elements and protect the occupants from ground and surface water as well as rodents and insects." Or. Admin. R. 437-004-1120 (16)(a). "Mattresses or pads furnished by the camp operator must be clean, in good repair, and free from insects and parasites." *Id.* (16)(g).

## V. Noneconomic Damages and the Unfair Trade Practices Act

Defendants argue that plaintiff may not recover noneconomic damages under the UTPA.[4]

Defendants are correct. Under the UTPA, a private party who suffers "an ascertainable loss of money or property" may recover actual or statutory damages. Or. Rev. Stat. § 646.638(1). Noneconomic damages, such as emotional distress damages, are not cognizable as ascertainable losses under the UTPA. *See Mendoza v. Lithia Motors, Inc.*, No. 6:16-cv-01264-AA, 2017 WL 125018, *3 (D. Or. 2017) (citing *Pearson*, 358 Or. at 117) ("Noneconomic damages which are not objectively verifiable, such as physical pain or emotional distress, do not constitute ascertainable losses under the UTPA."); *Hamilton v. Gen. Mills, Inc.*, No. 6:16-cv-382-MC, 2016 WL 4060310, at *4 (D. Or. 2016) (citing *Pearson*, 358 Or. at 117) ("[The UTPA] standard precludes claims for personal injury and noneconomic losses such as physical pain, emotional distress, or humiliation from being brought under the UTPA."). Plaintiff's arguments regarding "actual" damages are not persuasive given the case law in Oregon as adopted by the Oregon District Court.

Defendants are entitled to summary judgment that plaintiff may not recover noneconomic damages under the UTPA, and so the Court GRANTS defendants' Motion for Summary Judgment on this issue.

## VI. Negligence

Defendants' arguments against plaintiff's negligence claim rely on two grounds: (1) that MJ's Labor is not an owner or operator of MJ's Motel; and (2) that defendants did not fail to comply with the cited health and safety rules. However, as explained above, there are fact issues regarding the ownership or operation of MJ's Motel, as well as fact issues regarding a breach of

---

[4] The Court requested supplemental briefing on this issue.

duties owed to plaintiff as alleged in violations of health and safety rules found in the various statutes and regulations plaintiff cites. Thus, the Court DENIES defendants' Motion for Summary Judgment as to negligence.

### VII. Oregon Contractor Registration Act

Or. Rev. Stat. § 658.440(2)(b) requires a labor contractor who "[o]wns or controls housing furnished to workers in connection with the recruitment or employment of workers" to "ensure that the housing substantially complies with any applicable law relating to the health, safety or habitability of the housing."

Defendants' arguments against OCRA liability depend on the argument that MJ's Motel and MJ's Labor are separate entities, so MJ's Labor cannot be liable for any alleged OCRA violations. However, as explained above, there are fact questions regarding the relationship of MJ's Motel and MJ's Labor, and so defendants are not entitled to summary judgment on the OCRA claim on that basis. Likewise, there are disputed issues of fact whether the Magoteauxs are labor contractors, by virtue of their ownership and management of MJ's Labor, and whether they own or control housing, by virtue of the nexus between defendants and MJ's Motel, so there are fact issues whether the Magoteauxs are liable under OCRA. *See* Or. Rev. Stat. § 658.440. James Magoteaux is a farm contractor and Jani Magoteaux is potentially jointly and severally liable for any of these alleged violations. Or. Admin. R. 839-015-0135(1)(c). Thus, the Court DENIES defendants' Motion for Summary Judgment on the OCRA claim.

### VIII. Unregistered Business Name

Under Or. Rev. Stat. § 648.135, a plaintiff may recover costs it incurred to ascertain the true name of an unregistered defendant when a cause of action arises out of that defendant's business. Defendants argue that plaintiff's claims are solely related to MJ's Motel, and so he

cannot bring a claim against MJ's Labor. However, as discussed above, given the evidence of the close relationship between MJ's Motel and MJ's Labor, and the evidence that MJ's Labor in part did business as MJ's Motel, there are disputed issues of fact regarding MJ's Labor's use of the MJ's Motel business name. Further, prior to 2017, defendants operated the Motel under the name "MJ's Motel" when no such assumed business name or corporate name was registered with the state. Bradley Decl., Exs. N & O. Thus, the Court DENIES defendants' Motion for Summary Judgment on the unregistered business name claim.

## IX. Punitive Damages

On his second (UTPA) and third (negligence) causes of action, plaintiff seeks punitive damages of $2,000,000, because defendants allegedly "acted with reckless and outrageous indifference to a highly unreasonable risk of harm" to Perez Serpas. First Am. Compl. ¶¶ 40, 46. Defendants argue that plaintiff cannot meet his burden to show with specific evidence that punitive damages are warranted under the facts of this case.

> Under Oregon law,
>
> Punitive damages are not recoverable in a civil action unless it is proven by clear and convincing evidence that the party against whom punitive damages are sought has acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others.

Or. Rev. Stat. § 31.730(1); *Jane Doe 130 v. Archdiocese of Portland in Or.*, 717 F. Supp. 2d 1120, 1140 (D. Or. 2010). Negligence alone cannot satisfy this standard. *Id.*

There is conflicting evidence regarding whether defendants acted with "reckless and outrageous indifference to a highly unreasonable risk of harm and ha[ve] acted with a conscious indifference to the health, safety and welfare of others." Defendants have presented evidence that, once alerted to the bed bug infestation in room 14, they tried three times to have the room

thoroughly treated, and were unable to, in part, because plaintiff himself may have been the bed bugs' source. Magoteaux Decl. ¶¶ 8, 9. However, plaintiff presents evidence that defendants knew for years that there was a bed bug problem and rented plaintiff a room despite the risk and despite knowing that previous attempts to treat the rooms were unsuccessful. Del Carlo. Ex. J, 229, 289-298 & Ex. I, 82.; Chavez Dep. 23:9-12. Once alerted to the bed bugs during Perez Serpas' stay, he was left to stay in the room for months and then to sleep on the floor, thus exposing himself to further bed bug bites. Perez Serpas Dep. 61:2-21. Gordillo cleaned the room only perfunctorily, and gave Perez Serpas a broom, which is arguably useless against bed bugs. *Id.* Perez Serpas experienced great physical pain and distress from the bedbugs, including itching, anxiety, the sensation of insects crawling on his skin, humiliation, and insomnia; further, some of the bug bites became infected. *Id.* 58:13, 68:24-69:1, 79:2-80:4, 81:11-17.

A jury could find from this sequence of events that defendants rented plaintiff a room despite the bed bug risk, and that once that risk materialized, failed to aid plaintiff sufficiently despite serious harm, sufficient under the punitive damages standard. *E.g.*, *Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 677 (7th Cir. 2003) (upholding punitive damage award against motel chain for exposing guests to bed bugs it had known about for years, because "defendant's behavior was outrageous but the compensable harm done was slight and at the same time difficult to quantify," largely consisting of physical and emotional distress); *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life Activists*, 422 F.3d 949, 962 (9th Cir. 2005) (citing *Mathias* with approval: "in cases where there are insignificant economic damages but the behavior was particularly egregious, the single-digit ratio may not be a good proxy for constitutionality"). Likewise, a jury could find plaintiff has met this standard

by clear and convincing evidence.[5] The Court cannot determine on summary judgment that these disputed facts as a matter of law fall short of the punitive damages standard.

Thus, the Court DENIES defendants' Motion for Partial Summary Judgment on the issue of punitive damages.

**CONCLUSION**

For these reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, defendants' Motion for Summary Judgment, as stated above.

IT IS SO ORDERED.

DATED this 30th day of August, 2019.

/s/ Patricia Sullivan
PATRICIA SULLIVAN
United States Magistrate Judge

---

[5] The parties have not argued, and the Court does not address, potential constitutional due process concerns over a large punitive damages award where compensatory damages are small. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("We decline again to impose a bright-line ratio which a punitive damages award cannot exceed. Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.").